WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Thomas Eliss Newsome,

                    Plaintiff,

         v.

Arizona Department of Corrections, et al.,

                    Defendants.

No.  CV 13-1187-PHX-SMM (JFM)

**O R D E R**

On June 12, 2013, Plaintiff Thomas Eliss Newsome, who is confined in the Idaho Correctional Center in Boise, Idaho, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed *In Forma Pauperis* (Doc. 2).  By Order dated August 12, 2013, the Court denied the Application to Proceed and gave Plaintiff 30 days to either pay the filing and administrative fees or file a complete Application Proceed *In Forma Pauperis*.  On August 27, 2013, Plaintiff submitted a six-month trust account statement and the second page of a new Application to Proceed *In Forma Pauperis* (Doc. 6).  However, on October 11, 2013, the Clerk of Court administratively closed the case, and entered judgment accordingly (Doc. 7).  By Order dated January 30, 2014, the Court construed Plaintiff's August 27, 2013 filing as a new *in forma pauperis* application and vacated the October 11, 2013 entry of judgment because Plaintiff had substantially complied with the Court's August 12, 2013 Order (Doc. 8).

1    Accordingly, the Court granted Plaintiff leave to proceed *in forma pauperis*, but

2    dismissed the Complaint for failure to state a claim.  Plaintiff was provided with 30 days

3    in which to file an amended complaint that cured the deficiencies identified in the

4    January 30 Order.

5          On February 18, 2014, Plaintiff filed a First Amended Complaint (Doc. 11).  By

6    Order dated October 27, 2014, the Court dismissed the First Amended Complaint because

7    Plaintiff had again failed to state a claim.  Plaintiff was provided with 30 days in which to

8    file a second amended complaint to cure the deficiencies identified in the Court's October

9    27 Order.

10         On November 10, 2014, Plaintiff filed a Second Amended Complaint (Doc. 15).

11    Plaintiff has also filed a Motion "to be under the American Disabilities Act in this Court

12    Proceeding" (Doc. 14).  The Court will deny the Motion and will dismiss the Second

13    Amended Complaint and this action.

14    **I.     Statutory Screening of Prisoner Complaints**

15         The Court is required to screen complaints brought by prisoners seeking relief

16    against a governmental entity or an officer or an employee of a governmental entity.  28

17    U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff

18    has raised claims that are legally frivolous or malicious, that fail to state a claim upon

19    which relief may be granted, or that seek monetary relief from a defendant who is

20    immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

21         A pleading must contain a "short and plain statement of the claim *showing* that the

22    pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8

23    does not demand detailed factual allegations, "it demands more than an unadorned, the-

24    defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

25    (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

26    conclusory statements, do not suffice."  *Id.*

27         "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

28    claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

1    550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual

2    content that allows the court to draw the reasonable inference that the defendant is liable

3    for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible

4    claim for relief [is] . . . a context-specific task that requires the reviewing court to draw

5    on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's

6    specific factual allegations may be consistent with a constitutional claim, a court must

7    assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.*

8    at 681.

9          But as the United States Court of Appeals for the Ninth Circuit has instructed,

10   courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338,

11   342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less

12   stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v.*

13   *Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

14   **II.    Second Amended Complaint**

15         In his three-count Second Amended Complaint, Plaintiff names as Defendants:

16   Nurse Baxter, a nurse practitioner at Arizona State Prison Complex-Florence ("ASPC-

17   Florence"); CO II Polivich, a correctional officer at ASPC-Florence; the unnamed

18   "Medical Director" at ASPC-Florence; the unnamed Warden at ASPC-Florence; an

19   unnamed CO III at ASPC-Florence; an unnamed CO IV at ASPC-Florence; and an

20   unnamed "extradition company" that transported Plaintiff from ASPC-Florence to Idaho.

21         Although largely unintelligible, Plaintiff appears to allege in Count One that

22   Defendants did not provide instructions to the extradition company tasked with moving

23   Plaintiff from ASPC-Florence to Idaho.  He indicates that he slipped and fell in an ASPC-

24   Florence shower in November, 2011, injuring his neck and back.  Despite these injuries,

25   Plaintiff appears to allege that the extradition company was not instructed to provide

26   support or medication for his injuries while transporting Plaintiff, causing further injury

27   to Plaintiff's neck and back.

28   . . . .

1          In Count Two, Plaintiff appears to allege that the Idaho Department of Corrections

2    ("IDOC") has sought Plaintiff's medical records from the Arizona Department of

3    Corrections ("ADOC") for more than three years.   As a result, IDOC has delayed

4    treatment of Plaintiff's injuries.   As a result of this delay, Plaintiff's injuries have

5    worsened to the point that he now requires surgery.   Plaintiff complains that he has

6    numbness in in his legs and knees, and is constantly in extreme pain.

7          In Count Three, Plaintiff largely appears to repeat his allegations from Counts One

8    and Two, but appears to also state that he now has to use a wheelchair and take many

9    medications.

10   **III.     Failure to State a Claim**

11         As discussed in the Court's previous Orders, to prevail in a § 1983 claim, a

12   plaintiff must show that (1) acts by the defendants (2) under color of state law

13   (3)  deprived him of federal rights, privileges or immunities and (4) caused him damage.

14   *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting

15   *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir.

16   1994)).   In addition, a plaintiff must allege that he suffered a specific injury as a result of

17   the conduct of a particular defendant and he must allege an affirmative link between the

18   injury and the conduct of that defendant.   *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377

19   (1976).

20         Plaintiff appears to seek relief for denial of constitutionally adequate medical care.

21   An Eighth Amendment medical claim requires a sufficiently culpable state of mind by

22   the Defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825,

23   834 (1994).   Deliberate indifference is a higher standard than negligence or lack of

24   ordinary due care for the prisoner's safety.   *Id.* at 835.   To state a claim of deliberate

25   indifference, plaintiffs must meet a two-part test.   "First, the alleged constitutional

26   deprivation must be, objectively, sufficiently serious"; and the "official's act or omission

27   must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834

28   (internal quotations omitted).   Second, the prison official must have a "sufficiently

1    culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or

2    safety." *Id.* (internal quotations omitted).  In defining "deliberate indifference" in this

3    context, the Supreme Court has imposed a subjective test: "the official must both be

4    aware of facts from which the inference could be drawn that a substantial risk of serious

5    harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

6         Plaintiff has not connected the conduct of any of the Defendants to his alleged

7    injuries.  Plaintiff has not alleged facts sufficient to demonstrate that any of the

8    Defendants were responsible for either arranging Plaintiff's transport or the conditions

9    thereof, or for transmitting Plaintiff's medical records from ADOC to IDOC.  Plaintiff

10   has also failed to allege when he was transported to Idaho or how soon this occurred after

11   his alleged injuries.  Although *pro se* pleadings are liberally construed, *Haines v. Kerner*,

12   404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause

13   of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

14   1982).  Further, a liberal interpretation of a civil rights complaint may not supply

15   essential elements of the claim that were not initially pled.  *Id*.  Accordingly, Plaintiff has

16   failed to state a claim against any of the Defendants for which relief could be granted in

17   any of his three Counts, and they will be dismissed.

18   **IV.    The Americans with Disability Act and the Rehabilitation Act**

19        Plaintiff states in his Motion that he seeks "these proceeding[s]" to be

20   "recognized" "under the Rehabilitation Act as I am disabled."  Although unclear, the

21   Court will construe Plaintiff's Motion as attempting to clarify that the claims raised in his

22   Second Amended Complaint are being brought pursuant to either the Americans with

23   Disabilities Act ("ADA") or the Rehabilitation Act ("RA").[1]  The Eleventh Amendment

24   does not bar an action for damages against the State when claims are brought in federal

25   court pursuant to the ADA or the RA.  *See Burns-Vidlak v. Chandler*, 165 F.3d 1257,

26   1260 n.6 (9th Cir. 1999) (citing *Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997)

27

28        [1] Plaintiff did not specify the constitutional or other federal civil right that was allegedly violated in any of his claims for relief in the Second Amended Complaint.

- 5 -

1   ("Congress has unequivocally expressed its intent to abrogate the State's immunity [from

2   suit in federal court] under both the ADA and the Rehabilitation Act.")).   The ADA and

3   RA are applicable in a prison context. *Pennsylvania Dept. of Corrections v. Yeskey*, 118

4   S. Ct. 1952, 1953 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1022-23 (9th Cir. 1997);

5   *Duffy v. Riveland*, 98 F.3d 447, 455-56 (9th Cir. 1996).

6         "The Rehabilitation Act is materially identical to and the model for the ADA,

7   except that it is limited to programs that receive federal financial assistance." *Armstrong

8   v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (internal quotations omitted).   Title II of

9   the ADA was expressly modeled after § 504 of the Rehabilitation Act. *Zuckle v. Regents

10   of the University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("there is no

11   significant difference in analysis of the rights and obligations created by the ADA and the

12   Rehabilitation Act").   Because the ADA has a broader scope, and the Ninth Circuit

13   analyzes both Acts under an ADA standard. *Armstrong*, 275 F.3d at 862.   This Court

14   follows the Ninth Circuit and discusses Plaintiff's claims in the context of the ADA.

15         Under Title II of the ADA, "no qualified individual with a disability shall, by

16   reason of such disability, be excluded in participation in or be denied the benefits of the

17   services, programs, or activities of a public entity, or be subjected to discrimination by

18   any such entity."   42 U.S.C. § 12132.   As used in this provision, a "public entity" is

19   defined in part as "(A) any State or local government; [or] (B) any department, agency,

20   special purpose district, or other instrumentality of a State or States or local

21   government. . . ."   42 U.S.C. § 12131.   However, a public entity may also be sued by

22   naming as a defendant a government official, in his or her official, rather than individual

23   capacity. *See, e.g., Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) (naming governor

24   and other state officers in official capacity).

25         In order to state an ADA claim, a plaintiff must first demonstrate that he:

26              (1) is a handicapped person[2]; (2) that he is otherwise qualified; and

27

28         [2] The ADA requires that the impairment substantially limit one or more of the
      individual's major life activities.   "Major life activities" include "functions such as caring

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> that prison officials' actions either (3) excluded his participation in or denied him the benefits of a service, program, or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap.

*Duffy*, 98 F.3d at 455.  In addition, in order to state a claim for damages, Plaintiff must also show discriminatory intent on the part of Defendants.  *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

Accordingly, Plaintiff's ADA claim must fail.  As an initial matter, Plaintiff has not sufficiently alleged facts to support that he is disabled for purposes of either the ADA or RA.  In his Motion, Plaintiff states that "[he is] disabled under social security," but does not provide any evidence in support of this vague and conclusory statement.

Furthermore, Plaintiff does not appear to have named a proper respondent for any ADA or RA claims.  Under the plain language of Title II of the ADA, a *public entity* must deny Plaintiff the benefit of a service or program.  Therefore, Plaintiff may not maintain a right of action against individual prison officers or officials in their *individual* capacity.  *See e.g.*, *Failla v. City of Passaic*, 146 F.3d 149, 152 n. 1 (3rd Cir. 1998) (affirming in part district court order granting summary judgment for Chief of Police in individual capacity because ADA does not impose individual liability).  *See also United States E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280-82 (7th Cir. 1995) (holding no liability against individuals who do not otherwise meet "employer" definition under Title I of the ADA); *Silk v. City of Chicago*, 194 F.3d 788, 788 n.5 (7th Cir. 1999) (same); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999) (same); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same).  Although the Ninth Circuit has not yet addressed individual liability under the ADA, it has previously held that individual liability may not be imposed against employees under Title VII and the Age Discrimination in Employment Act.  *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993).  Plaintiff has not specified that any of the Defendants are being sued in their *official* capacities, as opposed to their *individual* capacities.

---

for oneself, performing manual tasks, walking, seeing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(I).

1        To the extent that Plaintiff has intended that, for instance, the unnamed Warden or

2    Medical Director, are, by dint of being named according to their official titles, named in

3    their official capacities, Plaintiff has not established that any act by these Defendants has

4    "excluded [Plaintiff's] participation in or denied him the benefits of a service, program,

5    or activity; or…otherwise subjected him to discrimination on the basis of his physical

6    handicap."  While Plaintiff has alleged that treatment of his injuries has been delayed, he

7    has not established that either the Warden or Medical Director – both of whom have not

8    had responsibility for Plaintiff's well-being since he was transferred to IDOC – are

9    responsible for that delay.  Plaintiff has not provided any facts to support that IDOC was

10    *unable* to treat Plaintiff's injuries without cooperation from ADOC; indeed, such an

11    assertion would not be supported by Plaintiff's own allegation that IDOC has scheduled,

12    or already carried out, surgery and treatment on Plaintiff's injuries.  Accordingly, to the

13    extent Plaintiff has raised any of his claims under the ADA or RA, he has failed to state

14    such a claim against any named Defendant for which relief could be granted.

15    **V.    Dismissal without Leave to Amend**

16        For the reasons set forth above, the Court will dismiss the Second Amended

17    Complaint.  "Leave to amend need not be given if a complaint, as amended, is subject to

18    dismissal."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

19    The Court's discretion to deny leave to amend is particularly broad where Plaintiff has

20    previously been permitted to amend his complaint.  *Sisseton-Wahpeton Sioux Tribe v.*

21    *United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Repeated failure to cure deficiencies is

22    one of the factors to be considered in deciding whether justice requires granting leave to

23    amend.  *Moore*, 885 F.2d at 538.

24        Plaintiff has made three efforts at crafting a viable complaint and appears unable

25    to do so despite specific instructions from the Court.  The Court finds that further

26    opportunities to amend would be futile.  Therefore, the Court, in its discretion, will

27    dismiss Plaintiff's Second Amended Complaint without leave to amend.

28    . . . .

**IT IS ORDERED:**

(1)   Plaintiff's Motion (Doc. 14) is **granted** to the extent Plaintiff seeks to clarify the basis for the claims raised in his Second Amended Complaint.  The Motion is denied in any other respect.

(2)   Plaintiff's Second Amended Complaint (Doc. 15) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(3)   The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(4)   The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 2nd day of February, 2015.

Stephen M. McNamee
Senior United States District Judge